IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-HC-2197-BO

| | |
|---|---|
| FRED D. COOMBS, )<br>    Petitioner, )<br>         )<br> v.      )<br>          )<br>GEORGE SNYDER, et al., )<br>    Respondent. ) | O R D E R |

  Fred D. Coombs petitioned the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a motion to dismiss or alternatively for summary judgment. Petitioner responded to the motion, and the matter is ripe for determination.[1]

## FACTUAL BACKGROUND

  On September 14, 1989, petitioner was sentenced to an aggregate 15 - 45 years imprisonment for first degree theft and forgery convictions in the Superior Court of the District of Columbia. While incarcerated on this sentence, on September 23, 1998, a United States Parole Commission hearing examiner conducted a pre-hearing assessment of the case and found petitioner to have been paroled from an aggregate 7 year federal sentence for mail fraud and felon in receipt of firearms and that a parole violation warrant had been issued on May 15, 1989.[2] On

---

[1] Petitioner was released from custody on June 17, 2008.
http://bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=11790-083

[2] The United States Parole Commission (hereinafter "the Commission") assumed the responsibility of making parole release decisions for all eligible District of Columbia Code felony offenders on August 5, 1998, pursuant to the Revitalization Act and D.C. Code 24-209. See 28 C.F.R. § 2.70. Therefore, the Commission had authority over Coombs as either a D.C. offender or a federal offender.

September 30, 1998, petitioner appeared before the hearing examiner for an initial parole hearing. The hearing, however, was postponed to obtain additional information.

On March 12, 1999, the Commission ordered the 1989 warrant withdrawn and the federal case closed. The Commission then retarded petitioner's parole date to be effective September 21, 1999, with placement in a halfway house prior to release. On November 24, 1999, petitioner was released on parole to a halfway house in Washington, D.C.

On October 13, 2006, U.S. Probation Officer Tara Baxa advised the Commission of petitioner's arrest on October 2, 2006, for possessing a handgun inside a motor vehicle, and other motor vehicle laws. She advised the Commission of petitioner's failure to report the arrest as required by his conditions of parole.

On November 1, 2006, the Commission issued a warrant for petitioner. Petitioner was charged with violating the conditions of his parole based on the October 2, 2006, arrest. On December 20, 2006, the United States Marshal Service arrested petitioner on the Commission's warrant. On January 5, 2007, a hearing was conducted to determine probable cause. Petitioner's nephew, Iven Miller, appeared and claimed the gun found in petitioner's car was his and that he had left it inside the car sometime after August 24, 2006. While the examiner found probable cause to exist, he recommended release prior to a revocation hearing based on mitigating circumstances and the length of time petitioner has successfully spent on parole prior to this arrest. An order was issued to this effect, but rescinded based on information indicating petitioner could pose a risk to the community if released.

2

On April 5, 2007, a Parole Commission hearing examiner conducted the revocation hearing. At the hearing, petitioner made numerous objections regarding his custody, and the delay in his 1999 release.

Petitioner testified and denied having a firearm in his car and denied having any knowledge of the gun. Again, petitioner's nephew testified that the gun belonged to him and that he had left it in the car after smoking a cigarette there two months earlier. Officer Lightner, the police who found the gun, also testified as to the events surrounding the arrest. He testified that he initially observed petitioner sitting in the driver's seat of a vehicle illegally parked next to a fire hydrant and too close to an intersection. As the officer approached the vehicle with another officer, he saw petitioner "lean over as if he was trying to put something under the front seat or get something from under the front seat." The officer saw a can of beer sitting on the console between the front seats. Petitioner produced his driver's license and when asked to produce the registration, began to reach under the seat. Because of this, the police officer asked petitioner to step out of the car. The police searched the car and found a bottle of brandy in the console and a .32 caliber revolver under the driver's seat. Petitioner denied knowing about the gun in the car and claimed it belonged to his brother.

The hearing officer concluded that the preponderance of evidence indicated that petitioner possessed the firearm in the car as charged. The officer recommended reparole after the service of 12 months based on stable employment and the time he successfully spent on parole.

The reviewing officer disagreed and recommended reparole at the bottom of the 18 to 24 months reparole guidelines based on the new criminal conduct while on parole. On April 17, 2007, the Commission issued its decision to revoke petitioner's parole, forfeit all of the time

3

spent on parole, and grant reparole after the service of 18 months. Petitioner appealed the Commission's decision which was affirmed by the National Appeals Board ("NAB"). The NAB modified the findings by removing the finding regarding the minor vehicle violations.

## CLAIMS PRESENTED

Petitioner's issues shall be reviewed by the court as follows: 1) due process violations based on the Commission's finding that he committed the charge of being a felon in possession of a firearm since he was not charged by police with that crime; and 2) abuse of discretion by the Commission in reviewing the three vehicle violations.

## DISCUSSION

Because the government has attached matters outside the pleadings, which the Court has considered in its review, the motion will be treated as a motion for summary judgment. See Fed. R. Civ. P. 12(d). Summary judgment is appropriate when there exists no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4

Petitioner's first issue appears to claim that he was deprived of his due process because he was charged with a violation not yet adjudicated by a court of law and there was no rational basis to make such findings.[3]

Due process protections are afforded to the revocation of parole process. Morrissey v. Brewer, 408 U.S. 471 (1972). A parolee is entitled to minimum constitutional due process which requires reasonably prompt informal inquiry conducted by an impartial hearing officer to determine if there is reasonable ground to believe that the arrested parolee has violated parole condition. Id. at 486-487. Thereafter at the revocation hearing, a parolee is entitled to:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489.

After reviewing the record, the court finds that Coombs was provided with all the process he was due. The Parole Commission has the authority to revoke parole if it finds, by a preponderance of the evidence, petitioner violated his parole by engaging in new criminal conduct. See 28 C.F.R. Sec. 2.105(a), C.F.R. § 2.200, and § 2.218(a); Allston v. Gaines, 158 F. Supp. 2d 76, 80 (D. D.C. 2001). Hearsay is admissible. Campbell v. United States Parole Comm'n, 704 F.2d 106, 109-10 (3d Cir.1983) (citing Zannino v. Arnold, 531 F.2d 687, 692 (3d Cir. 1976)). The Commission may consider information from prosecutors and other parties and

---

[3] The court notes that in the petition, the issues are not clearly set out and are addressed as the court found them to be argued.

evidence of offenses from dismissed charges. Id. Moreover, the Commission may consider evidence of offenses in which the charges were not adjudicated, dismissed, or uncharged. See Villarreal v. United States Parole Comm'n, 985 F.2d 835, 839 (5th Cir. 1993); Whitehead v. United States Parole Comm'n, 755 F.2d 1536, 1537 (11th Cir.1985) (per curiam) (The Parole Commission has the authority to make its own independent findings of criminal behavior regardless of the disposition of the defendant's criminal charge.); Campbell, 704 F.2d at 109-10 (citing United States ex rel. Goldberg v. Warden, 622 F.2d 60 (3d Cir. 1980)). Lastly, information in the Parole Commission's file is presumed considered by the Commission, and a court is not to infer that the Commission ignored information favorable to petitioner. See Nunez -Guardado v. Hadden, 722 F.2d 618, 621 (10th Cir. 1983).

In the instant case, the hearing officer considered the evidence, made credibility determinations and found by a preponderance of the evidence that petitioner was in violation of his parole. The credibility of the evidence in parole cases is committed to the discretion of the Parole Commission. See Roberts v. Corrothers, 812 F.2d 1173, 1179-1180 (9th Cir. 1987); Williams v. United States Parole Comm'n, 617 F. Supp. 470, 472 (M.D. Penn. 1985) (citing Iuteri v. Nardoza, 732 F.2d 32, 38 (1984)). Further, the Commission was within its complete discretion and authority to review a pending criminal offense, the felon in possession offense.

The second issue the court shall address is the issue regarding abuse of discretion in the Commission's review of the vehicle violations. However, the three motor vehicle violations were mooted by the NAB's decision to vacate the Commission's findings on those charges. See Preiser v. Newkirk, 422 U.S. 395, 401 (1975); Friedman's Inc v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002).

Alternatively, Coombs appears to seek immediate release from incarceration. "Given that my mother still lay in hospice, and I am certain of my ability to re-secure my employment; I would respectfully implore the USPC to allow this writer the opportunity to see out my mother's last days, with any added conditions it so deems appropriate." As of June 17, 2008, Coombs was released and the therefore, pending motions asking for release are MOOT.

Lastly, in a filing of March 6, 2008, petitioner appears to contest a restraining order acknowledged by the Commission from "P.G. County Circuit Court." At this time, the issue, if one at all, is not properly before the court. There is no indication of exhaustion as to an appeal of the order within the "P.G. County Circuit Court." Further, there is no indication that jurisdiction would be appropriate here. Therefore, any issue as a temporary restraining order from another jurisdiction is DISMISSED without prejudice.

Accordingly, the motion for summary judgment is GRANTED. The matter is DISMISSED with the exception of the issue of a pending state court restraining order which is DENIED without PREJUDICE. SO ORDERED, this 22 day of September 2008.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE